UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH K.,

               Plaintiff,                           **DECISION AND ORDER**

    v.

                                                              1:24-CV-00326 EAW

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

# INTRODUCTION

Represented by counsel, Plaintiff Deborah K. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 7), and Plaintiff's reply (Dkt. 8).[1] For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 4) is denied.

---

[1] Plaintiff has styled her filing a "motion for summary judgment." (Dkt. 4). Pursuant to Rule 5.5(d) of the Court's Local Rules of Civil Procedure, briefing on social security cases requires the parties to comply with Rules 5, 6, 7, and 8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which contemplate the filing of motions under Rule 12 of the Federal Rules of Civil Procedure. Accordingly, the Court construes Plaintiff's motion as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff protectively filed her application for DIB on July 29, 2021. (Dkt. 3 at 114).[2] In her application, Plaintiff alleged disability beginning May 7, 2021, due to the following conditions: "Severe and debilitating back pain; Prior lumb[a]r surgery 2016; Severe and debilitating neck pain; Prior cervical surgery 2019; Severe and debilitating headaches and migraines; Difficulty standing for any length of time; Difficulty with reaching, grasp, and grip; Neuropathy like lower extremity symptoms; [and] Severe depression and anxiety." (*Id.* at 124). Plaintiff's application was initially denied on October 25, 2021, and upon reconsideration on August 30, 2022. (*Id.* at 153-57, 159-72). A telephone hearing was held before administrative law judge ("ALJ") Kieran McCormack on March 27, 2023. (*Id.* at 70-113). On April 4, 2023, the ALJ issued an unfavorable decision. (*Id.* at 45-60). Plaintiff requested Appeals Council review; her request was denied on February 16, 2024, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12). This action followed.

## LEGAL STANDARD

**I.  District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[2]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**II.   Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2027. (Dkt. 3 at 50). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 7, 2021, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: lumbar stenosis, disc herniation, and spondylolisthesis; degenerative changes and status-post fusion of the cervical spine and migraine headaches. (*Id.* at 51). The ALJ further found that Plaintiff's medically determinable impairments of hyperlipidemia, gastroesophageal reflux disease (GERD), irritable bowel syndrome, history of renal cell carcinoma, status-post nephrectomy, and COPD, as well as adjustment disorder, major depressive disorder, and generalized anxiety disorder, were non-severe. (*Id.* at 51-53).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 53). The ALJ particularly considered the criteria of Listings 1.15 and 1.16 in reaching his conclusion. (*Id.* at 53-54).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:

> can stoop on an occasional basis; and can climb ladders, ropes, or scaffolds, as well as kneel and crouch on a frequent basis. She can reach overhead with both arms on a frequent basis. She can also work at jobs without

concentrated exposure to excessive noise, defined as noise in excess of a moderate sound level as defined in the DOT/SCO.

(*Id.* at 55).  At step four, the ALJ found that Plaintiff could perform her past relevant work as an administrative assistant, as that work did not require the performance of work-related activities precluded by Plaintiff's RFC.  (*Id.* at 59-60).

Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 60).

## II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the RFC is contrary to law, since it does not account for the full limiting effects of Plaintiff's impairments.  (Dkt. 5 at 3).  Plaintiff points specifically to the ALJ's evaluation of the assessment offered by Joel Schwab, D.O., relating to Plaintiff's cervical range of motion, as well as the ALJ's evaluation of Plaintiff's mental impairments.  (*Id*. at 10-16).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.     Evaluation of Dr. Schwab's Opinion

The Court turns first to the ALJ's evaluation of Dr. Schwab's opinion.  In response to Plaintiff's argument, Defendant contends that the ALJ reasonably concluded that Dr. Schwab's opinion was inconsistent with the record and unpersuasive.  (Dkt. 7-1 at 18-21).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's]

medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at

§ 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

Dr. Schwab, the consultative examiner, evaluated Plaintiff on August 2, 2022. (Dkt. 3 at 671-74). Dr. Schwab observed that Plaintiff appeared to be in no acute distress. (*Id*. at 672). Her gait was normal, she used no assistive devices, could not walk on her toes and heels, stopped squat at ten percent full, had a normal stance, needed no help changing for the examination or getting on and off the exam table, was able to rise from the chair without difficulty, and her cooperation and effort were good. (*Id*.). Her physical exam was largely normal. (*Id*. at 672-73). Plaintiff had some limited range of motion in her spine, but she had full range of motion in her shoulders, elbows, forearms, wrists, and fingers, as well as in her hips, knees, and ankles. (*Id*. at 673). She had no sensory deficits, full strength in her upper and lower extremities, intact hand and finger dexterity, and full grip strength. (*Id*.). Dr. Schwab assessed neck pain, low back pain, history of renal cancer, and migraine

headaches, and opined that Plaintiff has a marked restriction to moving her head in any direction, and a marked restriction for bending, lifting, or carrying heavy objects. (*Id*.).

The ALJ discussed Dr. Schwab's opinion in the written determination. (*Id*. at 58). Specifically, the ALJ noted that the results of Dr. Schwab's physical examination of Plaintiff were mostly normal, including that Plaintiff had full muscle strength in the upper and lower extremities, grip strength bilaterally, no neurological deficits, and only some limited range of motion in the cervical and lumbar spine. (*Id*.). The ALJ explained that Dr. Schwab's assessment of marked limitations for Plaintiff moving her head, and in bending, lifting, or carrying heavy objects, was thus inconsistent with Dr. Schwab's examination, and with the other unremarkable and normal physical examinations in the record following the alleged onset date. (*Id*.).

The ALJ's assessment of the opinion offered by Dr. Schwab was proper. Namely, it is clear to the Court that the ALJ considered both the supportability and consistency factors. For example, with respect to other medical evidence in the record, the ALJ discussed the opinions offered by both Dr. Harry Gallis and Dr. C. Krist, both of whom assessed a light RFC. (*See id*. at 58 (Dr. Gallis assessed a light RFC, with frequent climbing of ladders/ropes and scaffolds, kneeling and crouching, and bilateral reaching in front/laterally and overhead); *id*. (Dr. Krist assessed a light RFC with frequent stooping, frequent overhead reaching bilaterally, and avoiding concentrated exposure to noise)). The ALJ also discussed the medical record at length, including with respect to the evidence supporting that Plaintiff's cervical impairments rendered her unable to work. (*See, e.g., id*. at 56 (on April 6, 2021, Plaintiff "walked with a normal gait and there were no found

deficits in any area despite the diagnosis of cervical disc disorder with myelopathy and other intervertebral disc degeneration in the lumbar region"); *id*. (in August 2021, "records . . . showed cervical and lumbar disc impairments as well as migraines, but no overt serious symptoms were noted and in fact nothing more than conservative care was mentioned"); *id*. (on November 3, 2021, Plaintiff's "musculoskeletal and cervical examination was normal," and she "exhibited a normal range of motion in the cervical spine"); *id*. at 57 (during examination at the spine center on March 10, 2023, Plaintiff "walked with an antalgic gait, but exam of the neck was reported as grossly within normal limits")). The ALJ concluded:

> While the record documents the severe impairments of lumbar stenosis, disc herniation, and spondylolisthesis; degenerative changes and status-post fusion of the cervical spine and migraine headaches, the medical record does not corroborate the level of incapacity alleged by the claimant. The treatment records consistently show stable examination findings despite the occasional symptomatology (see further discussion below). Moreover, the claimant engages in a full array of daily activities, which supports the residual functional capacity.

(*Id*. (citations omitted)). In other words, it is clear to the Court that the ALJ found that Dr. Schwab's assessed limitations relating to Plaintiff's cervical spine were not supported by other evidence in the record.

Plaintiff points to other evidence in the record she contends supports that her cervical spine impairments render her unable to work. (*See* Dkt. 5 at 11). Plaintiff's argument concerning the assessment of Dr. Schwab's opinion amounts to no more than her disagreement with the ALJ's assessment of the opinion, which is not a basis for remand. *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *10 (W.D.N.Y. June 3, 2024) ("While Plaintiff may disagree with the ALJ's consideration of

the medical evidence of record, that does not mean that . . . the RFC finding is not supported by substantial evidence."). It is clear from the written determination that the ALJ carefully considered Dr. Schwab's opinion, including the supportability and consistency factors. To the extent there was other evidence in the record suggesting more severe assessments of Plaintiff's cervical functioning, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies—and it is not the Court's function to re-weigh the evidence. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Here, the ALJ's assessment of Dr. Schwab's opinion is thorough and well-supported by other medical evidence in the record. Remand is not required on this basis.

### B. The Mental RFC

Plaintiff's next argument is that the ALJ did not properly evaluate Plaintiff's mental impairments, and therefore his exclusion of any mental limitations from the RFC is not supported by substantial evidence. (Dkt. 5 at 13-16). In response, Defendant contends that substantial evidence supports the ALJ's findings that Plaintiff's mental impairments were non-severe, and that no further restriction of the RFC was warranted. (Dkt. 7-1 at 8-14).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a

claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

As explained above, at step two of the sequential analysis, the ALJ found that Plaintiff had non-severe mental impairments, including adjustment disorder, major depressive disorder, and generalized anxiety disorder. (Dkt. 3 at 51). In support of this conclusion, the ALJ relied in part on the opinion offered by Janine Ippolito, Psy.D., the consultative examiner, who opined that Plaintiff had mild limitations in her ability to interact adequately with supervisors, co-workers, and the public, sustaining concentration, and performing a task at a consistent pace, as well as moderate limitations for regulating

emotions, controlling behavior, and maintaining well-being, but that her mental limitations did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id*. at 51-53; *see also id*. at 668). The ALJ concluded that Plaintiff had mild limitations for understanding, remembering, or applying information, interacting with others, concentrating, persisting, and/or maintaining pace, and adapting and managing herself. (*Id.* at 53).

Plaintiff does not specifically dispute the ALJ's finding that her mental conditions are non-severe impairments. (*See* Dkt. 5 at 13). Rather, Plaintiff contends that because the ALJ found that she had some mild mental impairments when evaluating the four broad domains of mental functioning at step two of the sequential analysis, it was error for him not to consider whether Plaintiff's mental limitations would have any effect on her ability to perform a skilled job. (*Id.* at 13-15). Plaintiff contends that the ALJ should have included mental limitations in the RFC, and that he never explained why such limitations were excluded. (*Id*. at 14).

Contrary to Plaintiff's argument, the written determination includes a discussion of Plaintiff's mental impairments when discussing the RFC. For example, the ALJ discussed treatment records documenting Plaintiff's mental limitations. (*See, e.g.*, Dkt. 3 at 56 (discussing that during an examination on August 6, 2021, at Adult Medical Services, noting that Plaintiff answered "no" to having difficulties interacting with others, maintaining an adequate social life, or meeting the daily needs of food, housing, or transportation); *id*. (noting that on November 3, 2021, Plaintiff's neurological and psychiatric exams were normal); *id*. at 57 (discussing that mental status examinations "have

also consistently been unremarkable")). Further, the ALJ discussed the opinions offered by state psychiatric consultants April Strobel-Nuss, Psy.D. on October 25, 2021, and P. Roy Petrick, Ph.D., on August 19, 2022, which assessed non-severe psychiatric impairments with mild limitations in all categories, except that Dr. Petrick assessed no limits in the ability to understand/remember or apply information. (*Id*. at 58). The ALJ explained that he found these opinions to be persuasive, including because they were consistent with the rest of the evidence in the record and that they were factored into the finding that Plaintiff's mental impairments were non-severe. *Id*. Based on this evidence, the ALJ concluded:

> The undersigned is also aware, and has considered, that the claimant has been diagnosed with psychiatric impairments. However, for the reasons outlined earlier at Step Two of this Decision, these impairments do not cause more than mild limitations in the claimant's ability to perform basic mental work activities and are therefore non-severe. It is for this reason; no psychiatric limitation[s] have been included in the claimant's residual functional capacity.

(*Id*. at 59 (citations omitted)). Accordingly, Plaintiff's contention that the ALJ did not consider Plaintiff's mental impairments when assessing the RFC is not supported by the record.

Further, "'mild limitations' do not necessarily 'require the addition of mental limitations in the RFC.'" *See Lynette W. v. Comm'r of Soc. Sec*., No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (citation omitted); *see also Jane M.A. v. Comm'r of Soc. Sec*., No. 19-cv-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021) ("there are no regulations that mild limitations require mental limitations in the RFC"). As explained above, the ALJ discussed Plaintiff's mental impairments in the written

determination, and it is clear to the Court why the ALJ did not include any mental limitations in the RFC—namely, because Plaintiff's mental limitations were mild and she had normal mental status examinations, evincing that any mental limitations did not preclude her ability to work. Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                              _____
                                              ELIZABETH A. WOLFORD
                                              Chief Judge
                                              United States District Court

Dated: February 5, 2025
       Rochester, New York